IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **FLORENCE PERKINS,** : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Case No. 2:02-cv-572 |
| : | |
| **THE LIBERTY MUTUAL FIRE** : | JUDGE MARBLEY |
| **INSURANCE CO., ET AL.,** : | |
| : | Magistrate Judge King |
| Defendant. : | |

**ORDER**

**I. INTRODUCTION**

This matter is before the court on Defendant's Motion for Summary Judgment. For the reasons set forth below, this Court **GRANTS** Defendant's Motion for Summary Judgment. [Docket No. 80].

**II. BACKGROUND**

Plaintiff, Florence Perkins, has been insured by Liberty Mutual Insurance Company ("Liberty Mutual") at all times relevant to her case.[1] The facts, in the light most favorable to the non-moving party, are as follows. Plaintiff owns property at 364, 415, 444 and 446 North Garfield Avenue, Columbus, Ohio. On June 8, 2001, Plaintiffs' property was damaged by a windstorm, after which the properties incurred flood damage and were subject to acts of vandalism. It appears that Plaintiff contacted Liberty Mutual and, in a letter dated July 13, 2001,

---

[1] Liberty Mutual is the only named Defendant in this case, but, in various briefs filed with this Court, Plaintiff has named Matthew Bound, Dick Scriber, and Gregory Young as liable for her losses.

Liberty Mutual instructed Plaintiff to submit a written "Proof of Loss" form within 60 days. On July 18, 2001, Plaintiff received a letter from Matthew Bound, an agent of Liberty Mutual, explaining that he had been unable to contact her and asking her to call him. On September 5, 2001, Plaintiff submitted a proof of loss.

Plaintiff argues that although Liberty Mutual promised to repair promptly her property, it ultimately failed to do so, thereby forcing her to expend her own money to make various repairs. Moreover, Plaintiff alleges that because Liberty Mutual refused to repair the house in a timely manner, the house suffered additional damage, including flooding and mold infestation.

Plaintiff filed her initial Complaint on June 10, 2002. On May 1, 2003, United States Magistrate Judge Norah McCann King issued an Order and Report and Recommendation which suggested that this Court dismiss all Plaintiff's claims but the following: (1) breach of written contract for claims arising on or after June 10, 2001; (2) breach of oral agreements for claims arising on or after June 10, 1998; (3) bad faith tort claims arising on or after June 10, 1998, and (4) racial profiling claims pursuant to 42 U.S.C. § 1981. On August 19, 2003 this Court adopted and affirmed the Magistrate's Report and Recommendation.

On September 8, 2003, the Court scheduled a pretrial conference for September 18, 2003, for which Plaintiff failed to appear. The Court then issued an Order to Show Cause why the case should not be dismissed for want of prosecution. Plaintiff failed to respond by the deadline of September 29, 2003. Thus, on October 6, 2003, the Court dismissed the action for want of prosecution. On April 13, 2004, Plaintiff filed a Motion for Relief from Judgment which the Court granted on June 16, 2004, thereby reopening this case.

On July 19, 2004, Plaintiff filed a Motion for Summary Judgment, which this Court denied on November 30, 2004, ruling that Plaintiff was not entitled to summary judgment on any of her potentially viable claims. The parties have since engaged in written discovery, Plaintiff has been deposed, and the expert witness disclosure deadline has passed.

Now, Defendant has filed a Motion for Summary Judgment asking this Court to dismiss the remaining claims arguing that no genuine issue of material fact exists with regard to Plaintiff's remaining claims. For the following reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the non-moving party lacks evidence to

support an essential element of its case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1388-89 (6th Cir. 1993). Significantly, in responding to a motion for summary judgment, however, the non-moving party "may not rest upon its mere allegations . . . but . . . must set forth specific facts showing there is a genuine issue for trial." FED. R. CIV. P. 56(e); see *Celotex*, 477 U.S. at 324.

The Court recognizes that Plaintiff is a pro se litigant. A pro se litigant's pleadings are to be construed liberally and have been held to less stringent standards than formal pleadings drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Nevertheless, those who proceed without counsel must still comply with the procedural rules that govern civil cases. *McNeil v. United States*, 508 U.S. 106, 113 (1993).

## IV.  ANALYSIS

### A.  Breach of the Insurance Policy

Defendant argues that Plaintiff's written contract claims, which were all filed more than one year after the damage occurred, should be dismissed in light of the contract's one year statute of limitations. Specifically, Defendant argues that because the alleged damage occurred on June 8, 2001, but Plaintiff filed her initial Complaint in this Court on June 10, 2002, Plaintiff is barred from bringing said claims. Plaintiff counters that Ohio Revised Code Section 2305.06 requires only that a claim based on a written contract be brought within fifteen years.

Defendant's argument is well-taken. Although Ohio Revised Code § 2305.06 provides a fifteen year window for bringing claims arising from written contracts, parties to a written contract may agree to shorten this time period, provided that the period of limitations is a reasonable one. *Thomas v. Allstate Ins. Co.*, 974 F.2d 706, 709 (6th Cir. 1992) ("[P]arties to a

contract may agree to shorten the fifteen-year time limitation in which to sue, provided that the fixed period of limitation is reasonable.") (citing *Appel v. Cooper Ins. Co.,* 80 N.E. 955 (Ohio 1907)). Here, the insurance contract contains the following language: "No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss," which, in this case, occurred on June 8, 2001. *See LibertyGuard Deluxe Homeowners Policy* at 10 [hereinafter "*Homeowners Policy*"], attached as Ex. A to Defendants' Motion to Dismiss [Docket No. 5]. Thus, the question becomes whether a one year statute of limitations is a reasonable one. In *Thomas*, the court held that a one year contractual time limitation provision was reasonable and, hence, enforceable, rejecting the plaintiff's argument that reasonableness was necessarily a jury question. *Thomas*, 974 F.2d at 710. Therefore, with regard to Plaintiff's claims that both arise out of her June 8, 2001 loss and are based on her written insurance contract with Liberty Mutual, said claims are time-barred by the one year statute of limitations.[2]

Even if Plaintiff had filed her claim within the statute of limitations, the Court finds that Plaintiff's claim for breach of contract is without merit. A breach of contract occurs upon "any failure to perform a contractual duty" without legal excuse. *Aluminum Line Prod. Co. v. Brad Smith Roofing Co. Inc.*, 671 N.E.2d 1343, 1351 (Ohio Ct. App. 1996). To prove breach, a plaintiff must establish the existence of a contract, performance by one party, breach by another party, and damages or loss to the performing party. *Doner v. Snapp*, 649 N.E.2d 42, 44 (Ohio Ct. App. 1994). In this case, taking the facts most favorable to Plaintiff, the written record

---

[2]As Plaintiff conceded in her Opposition to Defendant's Motion to Dismiss, her most recent claims occurred on June 8, 2001. *See* Pl.'s Opp. to Def.'s Motion to Dismiss at 3.

reveals that Defendant did not breach its contract with Plaintiff. First, Plaintiff concedes that Defendant sent at least one contractor to her property in October of 2001, but that she turned them away because the repair proposal was inadequate. *See* Pl. Resp. to Def. Mot. to Dismiss at 4 [Docket No. 13]. Second, the record reveals that after Plaintiff rejected that contractor's proposed repairs, Defendant attempted to contact Plaintiff with letters dated March 25, 2002, July 11, 2002, August 1, 2002, and September 3, 2002, in which Defendant explained that Liberty Mutual needed to be permitted to inspect the property. Defendant, however, received no response.[3] Apart from "mere conclusory and unsupported allegations, rooted in speculation," which do not meet the burden required to overcome summary judgment, *see Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003), Plaintiff put forth no evidence that Defendant shirked its contractual duties. In fact, it appears that Plaintiff's refusal to fulfill conditions precedent to loss coverage, such as property inspection, resulted in Defendant's inability to fulfill its contractual duties.[4] The Court finds that because Plaintiff claims are time-barred and because, in any event, Plaintiff has not put forth any evidence demonstrating breach of contract, Defendant's Motion for Summary Judgment with regard to Plaintiff's claims that Liberty Mutual breached the written contract is **GRANTED**.

---

[3] These letters are attached to Plaintiff's Motion for Leave to File Motion With Exhibits Instanter. [Docket No. 32].

[4] Plaintiff, in refusing Liberty Mutual access to the property, breached her contractual duty to "show the damaged property" to Liberty Mutual representatives. *See Homeowners Policy* at 9 (stating "[y]our duties after loss" include "[a]s often as we reasonably require to . . . show the damaged property"). Moreover, as evidenced by the vandalism, flood damage, and mold infestation that the property suffered after June 8, 2001, Plaintiff failed in her contractual duty to "[p]rotect the property from further damage." *See Homeowners Policy* at 8.

### B. Breach of Oral Agreements for Claims Arising on or after June 10, 1998

Plaintiff claims that one or more of Liberty Mutual's agents promised to make repairs, but that such repairs were never made. Specifically, Plaintiff alleges as follows: (1) when she informed Liberty Mutual agents that her property had been vandalized, Liberty Mutual promised to send agents the same day, but failed to do so; (2) Matthew Bound, a Liberty Mutual agent, promised to fix all water damage, but Liberty Mutual subsequently refused to do so; and (3) Liberty Mutual refused to perform various other emergency repairs after agents promised as such.

Defendant argues that even assuming all Plaintiff's assertions regarding Liberty Mutual's agents' statements are true, Liberty Mutual is not liable for breach of an oral promise related to the underlying contract because an insurance agent cannot expand or contract the express terms of an insurance policy. *Ayers v. Kidney*, 333, F.2d 812 (6th Cir. 1964). In *Ayers*, the plaintiff was injured after Kidney's truck, which was carrying coal for Kidney's business, collided with a railroad train, in which the plaintiff was working. Although Kidney's contract explicitly excluded coverage for accidents occurring when the vehicle was being used in a business capacity, the plaintiff argued that an insurance agent had indicated otherwise, thus expanding the contract's terms. The court in *Ayers* disagreed, explaining as follows:

> [T]he subject we deal with here is not waiver or estoppel, but the question of whether a conversation between an applicant and an agent of an insurance company can add or eliminate terms contrary to the clear language of the policy. In the context of this case, we do not consider that contracts of insurance can thus be created. If they could, then indeed a named insured could, on the basis of his claim of oral communications, make an issue of fact as to whether he had $100,000 coverage on three automobiles instead of $5,000 on one automobile as provided in a policy delivered to him.

7

*Ayers*, 333 F.2d at 815; *see also Hartory v. State Auto. Mut. Ins. Co.*, 552 N.E.2d 223, 225-26 (Ohio Ct. App. 1988) (finding the dispute between plaintiff and defendant regarding what the insurance agents promised to be irrelevant because the scope of an insurance policy's coverage is not altered by an agent's statements).

In light of this body of law, the Court finds that it must look only to the insurance contract's express terms to determine whether Plaintiff can make a claim regarding oral promises made by various agents. The Court has already determined that, with regard to the insurance contract, Plaintiff's written breach of contract claims have been barred by both the statute of limitations and Plaintiff's failure to comply with her contractual duties. The agents' alleged statements cannot alter this result. Thus, the Court **GRANTS** Liberty Mutual summary judgment on Plaintiff's claims for oral breach of contract.

### C. Bad Faith Tort Claim

Bad faith claims exist "irrespective of the contractual liability, and the limitation period in the contract does not apply to such actions." *Thomas v. Allstate Ins. Co.* 974 F.2d 706, 711 (6th Cir. 1992) (citing *Staff Builders, Inc. v. Armstrong*, 525 N.E.2d 783, 788 (1988)). A bad faith tort claim arises if the insured establishes that an insurer denied coverage in an arbitrary and capricious way without justification. *Thomas,* 974 F.2d at 711 ("The test, therefore, is not whether the defendant's conclusion to deny benefits was *correct,* but whether the decision to deny benefits was arbitrary or capricious, and there existed a reasonable justification for the denial"). In other words, to win on its motion for summary judgment with regard to bad faith, Liberty Mutual must only demonstrate that it was *reasonably justified* in handling her claim as it did. *Id*. at 711 (citations omitted).

The Court finds as a matter of law that Defendant was reasonably justified in denying Plaintiff's claim because Plaintiff failed to satisfy several conditions precedent to coverage. As this Court stated in its November 30, 2004 denial of Plaintiff's Motion for Summary Judgment, the record demonstrates that Plaintiff continuously refused Liberty Mutual's property loss specialists, Matthew Bound and Gregory Long, access to the property for inspection purposes. Nor did Plaintiff permit Thompson Building Associates in October 2001 to make the requested repairs, stating that their efforts would be inadequate. Moreover, the record contains several attempts to contact Plaintiff, which were all to no avail.[5] Finally, Defendant notes that in February of 2003, it sent Plaintiff checks totally over $11,000, which equaled the estimated repair costs of the properties, as determined by Thompson Building Associates. Plaintiff returned the checks however, deeming them insufficient. Plaintiff put forth no evidence that Defendant acted arbitrarily and capriciously in its management of her claim. The Court concludes that Defendant's actions with regard to Plaintiff's claim were reasonably justified and not in bad faith. Thus, the Court **GRANTS** Defendant's Motion for Summary Judgment with regard to Plaintiff's claims that Defendant acted in bad faith.

### D. Racial Discrimination under 42 U.S.C. § 1981

Ms. Perkins, a minority homeowner, claims that Liberty Mutual engaged in racial discrimination by charging her higher premiums than those charged to white homeowners and by refusing to comply with her demands for the July 8, 2001 property damage. Specifically,

---

[5] The letters, dated March 25, July 11, August 1, and September 3, 2002, reveal Defendant's attempts to inspect the property. In each letter, Defendant, through its agents Gregory Young and Matthew Bound, explained that claim coverage was contingent on property inspection. *See* Plaintiff's Motion for Leave to File Motion With Exhibits Instanter.

9

Plaintiff alleges that Liberty Mutual charges different insurance rates and handles insurance claims differently when the client is a minority, all in violation of 42 U.S.C. § 1981. That section provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). The statute defines the term "make and enforce contracts" as including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981(b). The question becomes whether Plaintiff has presented any evidence, either direct or circumstantial, to support her racial discrimination claim. To survive Defendant's Motion for Summary Judgment, Plaintiff must present at least some evidence to support her claim that Liberty Mutual's actions were in violation of § 1981.

If Plaintiff adduces direct evidence to support her discrimination claim, then she must proffer evidence sufficient to make out a prima facie case of discrimination under four-part *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) framework: (1) she is a member of a protected class; (2) she suffered an adverse action at the hands of the defendants; (3) she was qualified to be insured by Defendant; and (4) she was treated differently from similarly situated citizens who are not members of the protected class. *See Mitchell,* 964 F.2d at 582 (noting that a plaintiff may substitute for the fourth element in the typical *McDonnell Douglas* framework evidence that similarly situated individuals outside the protected class received better treatment than he).

10

In the absence of direct evidence, however, a claim of race discrimination under Section 1981 not only requires evidence sufficient to make out a prima facie case of discrimination under the *McDonnell-Douglas* framework, but also requires evidence that the discrimination was intentional. *Bell v. Ohio State University*, 351 F.3d 240, 252-53 (6th Cir. 2003).

Even if Ms. Perkins were able to fulfill the first three elements, she has not produced even a scintilla of evidence of the fourth factor, namely, that Liberty Mutual treated any similarly situated non-minority homeowner differently from the way it treated her with regard to any aspect of her contract, including rates, loss recovery, or service. Plaintiff, in her various discovery requests, attempted to elicit some sort of evidence that Defendant favored white homeowners over non-white homeowners. In response to several of her questions asking about the different rates and treatment afforded minority and non-minority customers, Defendant explained: "Liberty Mutual does not keep track of the ethnicity of its claimants and it therefore cannot respond to this request." *See* Response to Discovery Requests Nos. 23-27 at Def.'s Ex. C.[6] Additionally, Defendant responded "No" when asked whether "insurance companies usually emphasize the fact that their policies will provide security only upon the sale of deluxe protection to Black persons, for a higher premium," but did explain as follows when asked whether Liberty Mutual . . . charge[s] premiums according to area: "Liberty Mutual does charge

---

[6]Questions 23 through 27 read as follows:
23. What is the normal ration of claims made by White persons that are not paid?
24. What is the normal waiting period for claims to be paid to White persons?
25. What is the normal ratio of claims made by Black persons that are not paid?
26. What is the normal waiting period for claims to be paid to Black persons?
27. Are the claims of White persons settled in higher amounts than claims for Black persons?

*See* Defendant's Ex. C.

11

its premiums, in part, 'according to the area.' For example, property insurance for property in a hurricane area or in an earthquake area will be more expensive than it would be for similar property not located in such an area." *Id*. at Response to No. 30.

Plaintiff, in her deposition, asserted that the Liberty Mutual telephone agents, with whom she spoke regarding her property's condition, treated her poorly because of her race:

> Q: How do you think the person that you talked to on the phone knew your race?
>
> A: I believe - - I believe for somehow that we are flagged in the system and they know your race automatically.
>
> Q: Were you ever asked?
>
> A: No.

*See Dep. of Plaintiff* at 47 (Def.'s Ex. D).

Neither Plaintiff's deposition nor Plaintiff's discovery requests contain any evidence demonstrating that Defendant treated Plaintiff differently because of her race. Plaintiff cannot point to any white person who paid less or received better treatment. Plaintiff's assertions of racist insurance practices are unsupported by any evidence other than those statements contained in her pleadings. This lack of evidence, direct or circumstantial, does not meet the threshold evidentiary showing, minimal though it may be, required to defeat summary judgment. As stated by Federal Rule of Civil Procedure 56(e):

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

FED. R. CIV. P. 56(e). Moreover, it is a general rule that "mere conclusory and unsupported allegations, rooted in speculation, do not meet that burden." *Bell*, 351 F.3d at 253 (citing *Bryant*

*v. Commonwealth of Kentucky,* 490 F.2d 1273, 1274 (6th Cir.1974) (per curiam)).  Because Plaintiff's accusations of race discrimination, which have been made without any showing of support, are not sufficient to defeat summary judgment, the Court **GRANTS** Defendant's Motion for Summary Judgment on the issue of racial discrimination under 42 U.S.C. § 1981.

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED.** This case is hereby **DISMISSED**.

**IT IS SO ORDERED.**


    s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: September 21, 2005**